UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEICO MARINE INSURANCE
COMPANY,

    Plaintiff,

v.                                                           Case No. 8:16-cv-2329-T-27MAP

JAMES SHACKLEFORD,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's Motion for Final Summary Judgment (Dkt. 24), Defendant's Memorandum in Opposition (Dkt. 35), Defendant's Notice of Supplemental Authorities (Dkt. 36), and Plaintiff's Reply (Dkt. 41). Upon consideration, the motion for summary judgment (Dkt. 24) is **DENIED**.

### I. BACKGROUND

GEICO Marine Insurance Company issued a marine insurance policy covering Defendant's vessel on March 13, 2016. (Dkt. 1 at pp. 14-35). The vessel suffered damage from inclement weather, consisting of lightning and strong winds, on June 17, 2016 while docked in Fort Lauderdale, Florida. (Dkt. 24-9 at ¶ 6). GEICO filed a Complaint seeking declaratory judgment that the policy does not cover the loss because of Defendant's breach of a navigational warranty in the policy (Count I), his breach of the implied warranty of seaworthiness (Count II), and his breach of the maritime duty of *uberrimae fidei* (utmost good faith) (Count III). (Dkt. 1).

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.' " *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All facts are viewed and all reasonable inferences are drawn in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial burden of showing that there are no genuine disputes of material fact. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions on file to designate facts showing a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. The nonmoving party's evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable finder of fact could find for the nonmoving party. *See id.*

## III. DISCUSSION

GEICO is not entitled to summary judgment because it has not met its burden of establishing the absence of a genuine issue of material fact with respect to the three breaches it alleges.

### A. *The Policy's Terms Governing Navigational Areas Are Ambiguous and the Ambiguity Must Be Resolved Against GEICO*

GEICO asserts in Count I that the policy does not cover the loss because the vessel was located "outside of the agreed upon navigational area when the loss occurred." (Dkt. 1 at ¶ 40). GEICO issued the policy of marine insurance, on a liability only basis, to Defendant on March 13, 2016. The "General Conditions" section of the policy provides:

**Where Covered:**

Coverage is provided:
A. While the boat is afloat within the navigational area shown on the Declarations Page; and
B. While the boat or its equipment is ashore or being transported by land conveyance in the United States or Canada.

(Policy, Dkt. 1 at p. 32). The Declarations Page attached to the policy at the time of issuance includes a section titled "Cruising Limits" that provides "the boat must be north of Cape Hatteras, NC from June 1 until November 1 annually." (*Id.* at p. 14). It is undisputed that the vessel was south of Cape Hatteras when the loss occurred.

While Geico's contention seems straightforward because the vessel was outside the navigational area prescribed by the Declarations Page when the loss occurred, a careful analysis of the policy and its endorsements reveal an ambiguity with respect to whether the "cruising limits" in the Declarations Page applied at the time of loss of were modified by the endorsements.

GEICO issued a March 14, 2016 endorsement that amended coverage to "Port Risk Ashore,"

which "provides no coverage for navigation, and coverage will only apply to the insured vessel while the boat is out of the water," and added hull coverage of $264,000. (*Id.* at p. 15). The "Navigation Area" section at the bottom of the endorsement is blank. (*Id.*). The Cruising Limits section of the Declarations Page issued with the March 14, 2016 endorsement provides that coverage is "Port Risk Ashore." (*Id.* at p. 16).

GEICO issued a May 27, 2016 endorsement that "[r]emoved the Port Risk Ashore restriction," but left the "Navigation Area" section blank. (*Id.* at p. 18). GEICO did not issue a declarations page with the May 27, 2016 endorsement. *See generally* (*id.*).[1]

Significantly, Defendant requested removal of the port risk ashore restriction from the policy via e-mails dated May 26, 2016 for the purpose of sailing the vessel from the west coast of Florida to Fort Lauderdale, where it would undergo repairs, that same week. *See* (E-mails dated May 26, 2016 and attached documents, Dkt. 35-2 at pp. 122-151). He provided a marine survey report prepared by Rich Parrey and an addendum to a marine survey report prepared by Steven Berlin in support of his request. *See* (*Id.*). Defendant commenced the voyage to Fort Lauderdale at the end of May 2016, and successfully completed that voyage. (Complaint, Dkt. 1 at ¶ 28); (Answer, Dkt. 5 at ¶ 28); (Defendant's declaration, Dkt. 35-1 at ¶ 14). As noted, the loss occurred in Fort Lauderdale in June 2016.

GEICO argues that the navigational limit in the March 13 Declarations Page controls, and

---

[1] Defendant contends that GEICO erroneously identified a navigational limit in the policy. (Dkt. 35 at p. 3). There is conflicting evidence of whether Defendant ever spoke with a GEICO representative about navigational or cruising limits when the policy was initially issued. (Defendant's deposition, Dkt. 35-2 at 34:3-6) (Defendant testified that he "absolutely" did not speak about navigational limits.); (Shroeder's deposition, Dkt. 24-3 at 15:9-22, 60:17-20) (An employee of GEICO's marine manager testified that he spoke with Defendant about navigational limits.). Defendant's contention that the navigational limit was "erroneously" included in the Declarations Page is, therefore, a disputed issue of material fact.

4

Defendant, therefore, breached the navigational warranty. Defendant argues that the May 27 endorsement that removed the port risk ashore restriction without providing a navigational limitation controls over the inconsistent Declarations Page, and that ambiguities must be construed against GEICO as the drafter of the policy. Defendant primarily relies on Florida law, but neither party addresses whether federal or Florida law governs the interpretation of the policy.

"Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law." *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000). " 'But, when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law.' " *Id.* (quoting *Coastal Fuels Mktg., Inc. v. Florida Exp. Shipping Co.*, 207 F.3d 1247, 1251 (11th Cir. 2000)). Therefore, "in the absence of a controlling rule of federal maritime law, the interpretation or construction of a marine insurance contract is to be determined according to state law." *LaMadrid v. National Union Fire Ins. Co. of Pittsburgh, PA*, 567 F. App'x 695, 699 (11th Cir. 2014); *see also Fenby v. M/V Three D of Guernsey*, 217 F. App'x 846, 848 (11th Cir. 2007) (per curiam) ("The district court applied Florida law in interpreting the contracts of marine insurance.").

"[A]dmiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability . . . ." *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1367-38 (11th Cir. 1988) (affirming judgment in favor of the insurer based on breach of a navigational warranty)." 'If there is an ambiguity in the language of the coverage, such ambiguity must be resolved against the

5

insurance company that drafted the particular language in question, and in favor of the insured.' " *LaMadrid*, 567 F. App'x at 699 (quoting *Aetna Ins. Co. v. Webb*, 251 So. 2d 321, 322-23 (Fla. Dist. Ct. App. 1971)); *see also New Amsterdam Cas. Co. v. Addison*, 169 So. 2d 877, 881 (Fla. Dist. Ct. App. 1964) (Ambiguous terms "are to be construed strictly and most strongly against the insurer and liberally in favor of the insured so as to effect the dominant purpose of payment to the insured."). "Under the Florida law of insurance contracts '[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage, the insurance policy is considered ambiguous.' " *Ruderman ex rel. Schwartz v. Washington Nat'l Ins. Corp.*, 671 F.3d 1208, 1211 (11th Cir. 2012) (per curiam) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)); *see also Kirch v. Mannen*, 393 So. 2d 63, 64 (Fla. Dist. Ct. App. 1981) ("[W]hen conflicting legal inferences, particularly concerning the intent of the parties, may be drawn from an ambiguous legal document . . . the issue is not properly subject to summary adjudication, and may be resolved only after trial.").

There appears to be no controlling rule of federal law governing interpretation of inconsistencies between the body of a marine insurance policy and an endorsement, and, therefore, it is appropriate to consider state law. *See LaMadrid*, 567 F. App'x at 699; *Fenby*, 217 F. App'x at 848. Under Florida law, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins.*, 756 So. 2d at 34. However, "to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls." *Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London*, 696 So. 2d 376, 379 (Fla. Dist. Ct. App. 1997).

The March 13 Declarations Page in this case makes clear that it is part of the body of the

policy by identifying the forms that are "a part of this Policy at the time of issue." (Dkt. 1 at p. 14); *see also Lenhart v. Federated Nat'l Ins. Co.*, 950 So. 2d 454, 456 (Fla. Dist. Ct. App. 2007) ("The *Declarations Page* made clear that it, along with the 'policy jacket' and any endorsements issued with it, are part of the policy."). Accordingly, to the extent there is an inconsistency between the endorsements and the March 13 Declarations Page, the endorsements control. *Steuart Petroleum*, 696 So. 2d at 379. If the policy is ambiguous with respect to navigational limits, all ambiguities must be resolved against GEICO as the drafter of the policy. *See LaMadrid*, 567 F. App'x at 699. And GEICO will not be entitled to summary judgment if the policy is susceptible to the reasonable interpretation that it covers Defendant's loss. *Ruderman*, 671 F.3d at 1211; *Kirch*, 393 So. 2d at 64.

As a starting point, the March 13 Declarations Page and the endorsements must be read consistently with the General Conditions section of the policy, which states that "[c]overage is provided . . . [w]hile the boat is afloat within the *navigational area* shown on the Declarations Page." (Dkt. 1 at p. 32) (emphasis added); *see also Auto-Owners Ins.*, 756 So. 2d at 34 (A policy must be read "as a whole, endeavoring to give every provision its full meaning and operative effect."). The March 13 Declarations Page does not use the term "navigational area," but rather uses the term "Cruising Limits" in providing that the vessel must be North of Cape Hatteras after June 1. (Dkt. 1 at p. 14). Both the March 14 and May 27 endorsement use the term "Navigation Area," but leave that section blank. (*Id.* at p. 15, 18).

In that context, a reasonable interpretation of the March 14 endorsement and associated Declarations Page is that these documents removed the specific coverage limit imposed by the March 13 Declarations Page. The Navigation Area section of the March 14 endorsement was left blank, the endorsement states there is no coverage for navigation, and the Cruising Limit section of the

7

Declarations Page states only "Port Risk Ashore." (Dkt. 1 at pp. 15-16). Likewise, the May 27 endorsement removing the port risk ashore restriction left the Navigation Area section blank, and GEICO did not issue a Declarations Page identifying a cruising limit with that endorsement.

The policy, therefore, can reasonably be interpreted as including no navigational limit when the vessel suffered the loss in June 2016 because there was nothing in the May 27 endorsement, particularly the Navigation Area section, to notify Defendant that the cruising limits of the March 13 Declarations Page applied. *See Time Ins. Co. v. Neumann*, 634 So. 2d 726, 729 (Fla. Dist. Ct. App. 1994) (Holding that a blank section in a health insurance contract created an ambiguity as to whether the insured was required to undergo a medical exam before the policy would become effective: "One interpretation of the application and conditional receipt is that no medical exam is required where the exam is not requested at the time the application is completed. This is certainly a reasonable interpretation where the application leaves blank the very space which is contained therein to notify the insured that the examination is to be completed by a person or entity on a given date and time.").

The reasonableness of the interpretation that the May 27 endorsement did not include a navigational limit is further demonstrated by the evidence that Defendant notified GEICO of his intent to sail the vessel to Fort Lauderdale when he requested removal of the port risk ashore restriction. Notwithstanding, GEICO left the navigation area section of the May 27 endorsement blank and did not issue a Declarations Page, as it did with the March 14 endorsement. Because the policy language is therefore susceptible to the reasonable interpretation that there was no navigational limit on coverage after May 27, the policy is ambiguous. GEICO is therefore not entitled to summary judgment on its breach of navigational warranty claim in Count 1. *Ruderman*,

671 F.3d at 1211; *LaMadrid*, 567 F. App'x at 699; *Kirch*, 393 So. 2d at 64.

### B. GEICO Fails to Establish that Defendant Breached a Warranty of Seaworthiness

GEICO asserts in Count II that the insurance policy was void from its inception because Defendant breached the implied warranty of seaworthiness. A vessel owner impliedly warrants the seaworthiness of the vessel at the inception of marine insurance coverage. *State Nat'l Ins. Co. v. Azhela Explorer, L.L.C.*, 812 F. Supp. 2d 1326, 1365 (S.D. Fla. 2011) (citing *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 945 (11th Cir. 1986)). A "seaworthy" vessel is one that "is reasonably fit for the intended use." *Aguirre v. Citizens Cas. Co. of N.Y.*, 441 F.2d 141, 144 (5th Cir. 1971).[2] Because the intended use of the vessel is the central question, the requirements of seaworthiness are " 'relative to the voyage or service proposed,' " and a ship that is " 'unseaworthy for an Atlantic crossing in December may nevertheless be seaworthy for a coasting run to the south in the same season.' " *Anzhela Explorer*, 812 F. Supp. 2d at 1364 (quoting G. Gilmore & C. Black, *The Law of Admiralty* § 2-6, at 65 (2d ed. 1975)). "Determining the seaworthiness of a vessel at a particular moment in time is the responsibility of the trier of fact." *Aguirre*, 441 F.2d at 144.[3]

GEICO fails to establish the absence of a genuine dispute of material fact with respect to the vessel's intended use and its reasonable fitness for that use. The evidence shows that Defendant made an insurance claim with his previous insurer after the vessel suffered damage in 2011.

---

[2] Decisions of the Fifth Circuit Court of Appeals handed down prior to September 30, 1981 are binding as precedent within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[3] Defendant argues that the warranty of seaworthiness does not apply to recreational vessels, but does not provide any binding authority to support that argument. *See* (Memorandum in Response, Dkt. 35 at pp. 7-8). Judges within the Eleventh Circuit have applied the doctrine to recreational vessels. *See Halmos v. Insurance Co. of Am.*, No. 08-10084-CIV-BROWN, 2011 WL 13107415, at *6 (S.D. Fla. Jan. 18, 2011); *Axis Reinsurance Co. v. Henley*, No. 4:08cv168-WCS, 2009 WL 3416248, at *16 (N.D. Fla. Oct. 22, 2009). Accordingly, Defendant has not established a basis to depart from the general rule that an insured warrants the seaworthiness of a vessel at the inception of insurance coverage.

(Defendant's deposition, Dkt. 35-2 at 22:17-23:9). From 2011 to 2014, Defendant moved the vessel to different boatyards for repair work, and later sued Sailor's Wharf, Inc. for negligent repairs and improperly hauling the vessel. *See* (*id.* at 39:6-17, 54:24-55:12). In November 2014, Defendant ceased his attempts to repair the vessel and executed a settlement of his insurance claim with his previous insurer, Continental Insurance Company, and its marine manager, Boat Owners Association of the United States ("Boat U.S."). That settlement provided that "the Vessel has been determined to be a Constructive Total Loss." (Settlement Agreement and General Release, Dkt. 35-2); (Defendant's deposition, Dkt. 35-2 at 39:18-22). From November 2014 to March 2016, the vessel received only basic maintenance to "keep the boat afloat." (Defendant's deposition, Dkt. 35-2 at 39:18-40:1); (Defendant's declaration, Dkt. 35-1 at ¶ 11). During that time, the vessel suffered multiple partial sinkings. (Defendant's deposition, Dkt. 35-2 at 43:22-44:2, 45:11-20).

Defendant's reason for applying for insurance coverage in March 2016 was to have a boatyard haul the vessel out of the water for an inspection relating to his lawsuit against Sailor's Wharf. (Defendant's deposition, Dkt. 35-2 at 27:13-18, 28:2-5). He testified that the boatyard required proof of insurance before it would haul the vessel out of the water. (*Id.* at 29:3-30:5, 31:11-17, 33:1-13). At that time, he "was still under the belief that it was not worth fixing the vessel" because of major structural defects caused by improper blocking of the vessel for over a year. (Defendant's declaration, Dkt. 35-1 at ¶ 24);[4] (Defendant's deposition, Dkt. 35-2 at 39:6-22).

---

[4] GEICO argues that Defendant's declaration should not be considered because he is not qualified to discuss the seaworthiness of the vessel and it includes statements of fact contradicted by his deposition testimony. (Dkt. 41 at p. 4). However, the only purported area of inconsistency identified by GEICO does not show a contradiction between Defendant's declaration and his deposition testimony. *Compare* (Defendant's declaration, Dkt. 35-1 at ¶ 24) (Defendant declares that no one at GEICO asked him about prior damage to the vessel during the application process.), *with* (Defendant's deposition, Dkt. 35-2 at 28:6-11, 48:22-24) (Defendant testified that he does "not really" remember the questions GEICO representatives asked him during the application process, but does not believe they asked him about prior damage.). Because all evidence must be viewed in the light most favorable to Defendant, GEICO has not

However, the inspection revealed that the vessel had regained its shape from sitting in the water for two years. (Defendant's deposition, Dkt. 35-2 at 40:2-41:5).

After the inspection, Defendant decided to sail the vessel to Fort Lauderdale for repairs, performed maintenance to prepare the vessel for that voyage, and successfully completed the voyage. (*Id.* at 40:23-41:5); (Defendant's declaration, Dkt. 35-1 at ¶ 14). And, for the reason, GEICO issued the endorsement that removed the port risk ashore restriction from the policy.

Based on the condition of the vessel, GEICO argues that there is no genuine dispute of material fact that the vessel was not reasonably fit for its intended use at the inception of the risk and, therefore, the policy is void. GEICO primarily relies on the opinions of Michael J. McCook and William Ward Eshleman II.[5]

McCook, a marine surveyer, inspected the vessel in October 2014 at the request of Boat U.S. and Continental Insurance Company for the purpose of Defendant's earlier insurance claim, and inspected the vessel again in August 2016 at the request of GEICO for the purpose of the current dispute. (McCook's declaration, Dkt. 24-6 at ¶¶ 6, 9). McCook concluded from his October 2014 inspection that several serious defects rendered the vessel a constructive total loss, and from his August 2016 inspection that the same defects had not been addressed. (*Id.* at ¶¶ 7, 12). McCook opines that "the Vessel was unsafe and unseaworthy at all times from my inspection in October 2014

---

established grounds for disregarding his declaration in its entirety. As for his statements about the seaworthiness of the vessel, he may not be qualified to testify about the vessel's reasonable fitness for certain voyages or services, *see* (Defendant's deposition, Dkt. 35-2 at 15:9-25) (Defendant testified that he has no education or training in marine surveying.), but his statements regarding his reasons for procuring insurance and his intended uses for the vessel are material to the seaworthiness analysis and should be considered, *see Anzhela Explorer*, 812 F. Supp. 2d at 1364.

[5] Both parties cite the opinion of marine surveyor Steven Berlin in support of their respective arguments regarding the vessel's seaworthiness. (Dkt 24 at pp. 7, 10-12; Dkt. 35 at pp. 8-9). However, an Order precludes Berlin and marine surveyor Rich Parrey from testifying as experts in that regard. (Order, Dkt. 45).

through the date of my second inspection of the vessel on August 11, 2016." (*Id.* at ¶ 13).

Eshleman owns a marine electrical company. At a bench trial in Defendant's case against Sailor's Wharf, he testified that he approved a report dated May 31, 2016 that was prepared by an employee who inspected the vessel's electrical systems. (Eshleman testimony, Dkt. 24-8 at 7:10-15). Based on his employee's findings, Eshleman testified that the vessel's electrical problems as of May 2016 rendered it unsafe to sail anywhere and unseaworthy from an electrical standpoint. (*Id.* at 41:23-42:11). But Eshleman did not personally inspect the vessel, and testified that the report was generated from the "personal observations and testing" of his employee which he did not independently confirm. (*Id.* at 10:18-11:13).

While the evidence GEICO relies on indicates that the vessel was not reasonably fit for blue water sailing, that alone does not establish the absence of a genuine dispute of material fact with respect to the vessel's seaworthiness. And there is evidence that Defendant's intended use of the vessel was limited at the inception of the risk. Viewing the evidence in the light most favorable to Defendant, when he applied for insurance coverage in March 2016, he intended to use the vessel as no more than evidence in his lawsuit against Sailor's Wharf. He had no intent to sail the vessel anywhere, and procured insurance only because a boatyard required proof of insurance before it would haul the vessel out of the water for an inspection. The reasonable conclusion that he did not intend to use the vessel for sailing is further supported by the port risk ashore restriction in the March 14 endorsement. Only after the inspection, which revealed the vessel was not in as dire a condition as Defendant initially believed, did he decide to sail the vessel to Fort Lauderdale for repairs.

With respect to the vessel's voyage to Fort Lauderdale, GEICO fails to establish the absence of a genuine dispute of material fact that the vessel was not reasonably fit for that voyage. The

12

undisputed facts that the vessel successfully completed the voyage and that inclement weather caused the loss supports Defendant's position that the vessel was seaworthy relative to the specific "voyage or service proposed." *See Anzhela Explorer*, 812 F. Supp. 2d at 1364 (internal quotation marks omitted). Based on the evidence of Defendant's limited intended use of the vessel and of its reasonable fitness for that use, therefore, GEICO has not overcome the general rule that the question of seaworthiness at a particular point in time is typically the responsibility of the factfinder. *See Aguirre*, 441 F.2d at 144; *see also Anzhela Explorer*, 812 F. Supp. 2d at 1365 ("Because a finding of unseaworthiness is so fact and context intensive . . . the trier of fact must consider all the competing evidence and render a judgment based on an objective standard.").

GEICO's reliance on McCook and Eshleman's opinions that the vessel was unseaworthy with respect to any voyage does not establish the absence of a genuine dispute of material fact. Eshleman based his opinion on the observations of his employee that he did not independently confirm. And McCook did not inspect the vessel between the inception of the policy and the loss. Notwithstanding, the vessel's successful completion of the Fort Lauderdale voyage demonstrates a genuine dispute of material fact. Because determining the vessel's seaworthiness at the inception of the coverage requires weighing competing evidence as to its intended use and fitness for that use, GEICO has not established entitlement to summary judgment on Count II. There remain disputed issues of material fact.

### C. There Are Genuine Issues of Material Fact Precluding Summary Judgment in GEICO's Favor on Its Uberrimae Fidei *Claim*

GEICO claims in Count III that Defendant breached his utmost duty of good faith, pursuant to the doctrine of *uberrimae fidei*, by failing to disclose facts material to its decision to assume the

13

risk. That doctrine requires an insured to fully and voluntarily disclose all facts within his knowledge that are material to a calculation of the insurance risk. *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000) (citing *Cigna Prop. & Cas. Ins., Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 420 (9th Cir. 1998)).

However, "[t]he principle of *uberrimae fidei* does not require the voiding of the contract unless the undisclosed facts were material and relied upon." *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 871 (2d Cir. 1985); *see also I.T.N. Consolidators, Inc. v. Northern Marine Underwriters, Ltd.*, 464 F. App'x 788, 794 (11th Cir. 2012) (per curiam) ("Because all parties knew of the loss here, a misrepresentation that no known loss had occurred could not have led Northern to rely on that statement, and would in no way constitute a material misrepresentation in breach of *uberrimae fidei*."). A fact is material if " 'it might have a bearing on the risk to be assumed by the insurer.' " *HIH Marine Servs.*, 211 F.3d at 1363 (quoting *Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997)). Questions of materiality involve assessments within the province of the trier of fact. *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1303 (11th Cir. 2015).

Further, parties to a marine insurance contract "are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." *See King v. Allstate Ins. Co.*, 906 F.2d 1537, 1542 (11th Cir. 1990). When parties "contract for their own standard to show misrepresentation or omission," that language "controls the rights and obligations of the parties," and the doctrine of *uberrimae* fidei is not applicable. *See id.* at 1542-43.

GEICO and Defendant contracted out of the doctrine of *uberrimae fidei* in this case.[6] *See id.* The section of the policy titled "Fraud and Concealment" provides:

> There is no coverage from the beginning of this policy if you or your agent has omitted, concealed, misrepresented, sworn falsely, or attempted fraud in reference to any matter relating to this insurance before or after any loss.

(Dkt. 1 at p. 33). That language controls the rights and obligations of the parties and displaces the doctrine of *uberrimae fidei*. *See King*, 906 F.2d at 1542.[7]

Applying the standard for omission and misrepresentation chosen by the parties, the evidence shows a genuine dispute of material fact of whether Defendant omitted, concealed, or misrepresented facts in reference to any matter relating to the insurance. GEICO argues that Defendant breached his obligation under either *uberrimae fidei* or the policy by failing to disclose "two critically material facts." (Dkt. 24 at pp. 15-16). According to GEICO, the first material fact is his execution of the settlement agreement with Continental Insurance Company and Boat U.S. on November 10, 2014 relating to the loss that occurred in 2011, which provided that "the Vessel has been determined to be a Constructive Total Loss." (Settlement Agreement and Voluntary Release, Dkt. 24-1 at ¶ 4). The second material fact identified by GEICO is Berlin's marine survey report prepared after his inspection on March 14, 2016 that valued the vessel at $100,000. (Dkt. 24-7 at pp. 46-51). GEICO

---

[6] Because the parties displaced the doctrine of *uberrimae fidei* with their own standard for fraud and concealment, Defendant's argument that the doctrine does not govern recreational vessels, as well as the cases he cites and provides as supplemental authority in support of that argument, are of no moment. *See* (Memorandum in Opposition, Dkt. 35 at pp. 13-14) (citing *Continental Casualty Company ex rel. Boat U.S. v. Hochschild*, No. A-2267-13T1, 2014 WL 6474297 (N.J. App. Div. Nov. 20, 2014); *Windsor Mount Joy Mut. Ins. Co. v. Giragosian*, 57 F.3d 50, 55 (1st Cir. 1995)); (Defendant's Notice of Supplemental Authorities) (citing *Progressive N. Ins. Co. v. Bachmann*, 314 F. Supp. 2d 820, 829 (W.D. Wis. 2004)).

[7] This case is distinguishable from the cases cited by Defendant, in which the parties displaced the doctrine of *uberrimae fidei* with an intentional misrepresentation standard. *See King*, 906 F.2d at 1539; *see also Axis Reinsurance Co. v. Henley*, No. 4:08cv168-WCS, 2009 WL 3416248, at *14 (N.D. Fla. Oct. 22, 2009) ("[T]he contract changed the general maritime rule of *uberrima* [sic] *fidei*, and the only misrepresentation or concealment that will void this contract is an intentional one.").

contends that by failing to disclose these material facts, "[e]ssentially, Shackleford failed to disclose that he was asking GEICO Marine to issue an insurance policy on a wreck." (Dkt. 41 at p. 3). Notwithstanding, GEICO acknowledges that Boat U.S. acted as marine manager for Continental Insurance when it settled Defendant's claim for damage to the vessel in 2014 and as its marine manager when it issued the policy covering the same vessel in 2016. *See* (Dkt. 24 at p. 13).

With respect to GEICO's argument that Defendant failed to disclose the existence of the November 2014 settlement agreement, the evidence shows that representatives of GEICO's marine manager, Boat U.S., participated in the mediation conference that resulted in the settlement agreement. The Boat U.S. representatives present at the mediation included McCook, the same marine surveyor GEICO retained to inspect the vessel for purposes of Defendant's insurance claim for the loss suffered in June 2016. *See* (Defendant's deposition, Dkt. 35-2 at 56:25-57:4, 66:2-13). When Defendant contacted GEICO in March 2016 to apply for insurance, he spoke with Boat U.S. employee Lynn Sosa, and may have spoken with Boat U.S. sales supervisor Patrick Schroeder. (Schroeder's declaration, Dkt. 24-2 at ¶¶ 2, 6); (Schroeder's deposition, Dkt. 24-3 at 8:22-9:7, 10:9-12). Defendant testified that when he applied for insurance coverage over the phone, he believed that GEICO possessed all of the records relating to the vessel:

> Q    When you were talking to the people at GEICO Marine before the policy was issued, did you tell them anything about the condition of the boat?
>
> A    I don't recall.
>
> Q    Did you tell them that the boat had previously been declared by Boat U.S. to be a constructive total loss?
>
> A    I don't think they asked any questions like that. From what I can recall, I think they asked for my date of birth. I was under the opinion you're all the same thing, that you have all of the records on the boat.

(Defendant's deposition, Dkt. 35-2 at 30:6-18).

If an insurer has knowledge of a fact, an insured's omission, concealment, or misrepresentation of that fact cannot constitute a breach of a duty to disclose. *See I.T.N. Consolidators, Inc.*, 464 F. App'x at 794. A reasonable factfinder could conclude from the evidence that the facts relating to the November 2014 settlement agreement were within GEICO's knowledge through its marine manager, Boat U.S. The evidence further allows for a reasonable conclusion that Defendant believed GEICO knew of the existence of the settlement agreement because he spoke to individuals employed by the same entities who previously told him that the vessel was a constructive total loss and, therefore, there was no need for him to inform those individuals about the agreement. *See* (Defendant's Deposition, Dkt. 35-2 at 29:15-25); *King*, 906 F.2d at 1540 ("It has been said that the insured is bound to communicate every material fact within his knowledge not known *or presumed to be known* to the underwriter[.]" (emphasis added) (internal quotation marks and citations omitted)). Accordingly, GEICO is not entitled to summary judgment on Count III to the extent its claim is based on Defendant's failure to disclose the settlement agreement.

Defendant also persuasively argues that there is a genuine issue of material fact as to whether the existence of the November 2014 settlement agreement is a matter relating to the insurance. (Dkt. 35 at pp. 16-17). As noted, his only reason for procuring liability only coverage was to haul the vessel out of the water for an inspection. The March 14 endorsement required the vessel to be kept out of the water. And GEICO issued the May 27 endorsement removing the port risk ashore restriction, knowing that he intended to sail the vessel to Fort Lauderdale for repairs. Based on the evidence of the limited coverage procured by Defendant, whether the settlement agreement and the

constructive total loss language was a matter relating to the insurance is a question to be resolved by the factfinder. *See AIG Centennial Ins.*, 782 F.3d at 1303.

As for GEICO's argument that Defendant failed to disclose Berlin's marine survey report that valued the vessel at $100,000, there is a genuine issue of material fact of whether he was aware of that valuation. GEICO provides evidence that Berlin e-mailed the report directly to Defendant. (Berlin's deposition, Dkt. 24-7 at 24:11-14). However, Defendant declares that his former counsel retained Berlin for purposes of preparing the marine survey report and that he did not personally see the report until after he terminated his former counsel in August 2016. (Defendant's declaration, Dkt. 35-1 at ¶ 20); *see also* (Defendant's deposition, Dkt. 35-2 at 54:4-9) (Defendant testified that he "never saw" the report "until things were blowing up between my other attorney and myself[.]"). And he testified that Berlin e-mailed him only the May 2016 addendum to the survey report, which did not include the $100,000 valuation, for purposes of his request to remove the port risk ashore restriction from the policy. (Defendant's deposition, Dkt. 35-2 at 53:3-18).

Accordingly, GEICO has not established entitlement to summary judgment on Count III because it fails to show the absence of a genuine issue of material fact of whether Defendant omitted, concealed, or misrepresented facts in reference to any matter relating to the insurance, and of whether GEICO relied on an omission, concealment, or misrepresentation in issuing coverage.

**DONE AND ORDERED** this 7th day of December, 2017.

**JAMES D. WHITTEMORE**
United States District Judge

Copies to: Counsel of record