UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GEICO MARINE INSURANCE COMPANY,**

       Plaintiff,

vs.                         Case No. 8:16-CV-02329-T-27MAP

**JAMES SHACKLEFORD,**

       Defendant.
_____/

**DEFENDANT'S TRIAL MEMORANDUM**

    Defendant, JAMES SHACKLEFORD, files this Trial Memorandum regarding issues that will arise in the case.

**I.  THE PARTIES CONTRACTED OUT OF FEDERAL ADMIRALTY LAW**

    Under Green v. Life & Health of America, 704 So.2d 1386, 1390–91 (Fla. 1988), the "parties are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." (quoting, King v. Allstate Ins. Co., 906 F.2d 1537, 1540 (11th Cir. 1990)).

    The Geico policy expressly states: "Any terms of this policy that conflict with the laws of the state where this policy is issued are considered amended to conform to such laws." (Doc. 24-4, p. 13). The word "term" in an insurance policy includes implied terms. "Every contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law, and these are as binding as

-1-

the terms which are actually written or spoken." First Nationwide Bank v. Florida Software Servs., Inc., 770 F.Supp. 1537, 1542 (M.D. Fla. 1991) (emphasis added). Thus, obligations implied by law are terms of an insurance policy and are subject to the conformity clause if they are inconsistent with state law.

A conformity clause amends an insurance policy to conform to a state law. See e.g., Jenkins v. Allstate Property & Cas. Ins. Co., 448 Fed.Appx. 977, 978, 2011 WL 6156832, at *2 (11th Cir. 2011) ("When the policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes."). But such a clause is also a choice of law provision. See Kubes v. American Medical Sec., Inc., 895 F.Supp. 212, 213 (S.D. Ill. 1995).

## II. GEICO'S CLAIMED BREACH OF THE IMPLIED WARRANTY OF SEAWORTHINESS

Under the Geico Policy, Florida law applies if there is an inconsistency between Florida law and any "term" of the policy. Based on the liberal construction of insurance policies in favor of the insured, the word "any" is broad enough to cover implied terms such as seaworthiness.

As stated in Berkshire Life Insurance Co. v. Adelberg, 698 So.2d 828 (Fla.1997), "[i]t has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." Id. at 830.

A contract may waive the implied warranty of seaworthiness. Thomas Jordan, Inc. v. Mayronne Drilling Mud, Chemical and Engineering Service, 214 F.2d 410, 413 (5th Cir. 1954). The warranty of seaworthiness will not be implied where it is waived.

McAllister Lighterage Line v. Insurance Co., 244 F.2d 867, 871 (2d Cir. 1957); Employers Ins. of Wausau v. Occidental Petroleum Corp., 978 F.2d 1422, 1439 (5th Cir. 1992).

Florida law is inconsistent with the implied warranty of seaworthiness. Section 627.409(2), Florida Statutes, provides:

> A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or application does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

Florida, unlike the majority of states, requires "that the insurer demonstrate a causal connection between a breach of warranty and the loss in order to avoid coverage." Commercial Union Ins. Co. v. Flagship Marine Services, Inc., 190 F.3d 26, 32 (2d Cir. 1999). This rule was "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss." Windward Traders, Ltd. v. Fred S. James & Co. of New York, Inc., 855 F.2d 814, 818 (11th Cir.1988) (quoting Pickett v. Woods, 404 So.2d 1152, 1153 (Fla. App. 1981)). Florida law requires a causal connection. See Windward Traders, Ltd., 855 F.2d at 818 ("In addition, its failure to notify the underwriters obviously played no part in causing the loss.") (applying Florida law); Pickett, 404 So.2d at 1153 (insurer must show breach of warranty substantially increased risk of loss suffered). Plaintiff has not made a claim under section 627.409.

### III. THE "OMISSION" CLAIM IS GOVERNED BY SECTION 627.409

The conformity clause precludes reliance on Geico's strained interpretation of its Policy. Rather, Florida law governs because there is an inconsistency.

Absent a clear and cogent inquiry from Geico during the telephonic application process, there is no omission under Florida law. "The modern rule seems to be that the insurer has a duty to make inquiry concerning matters deemed by it to be material to the risk, and the insured is entitled to a presumption that information not requested is deemed immaterial. Thus, where no inquiry is made about matters alleged to have been concealed, the insurer may avoid the policy only by proving that the concealment was in fact material and, further, that the withholding of such information was intentional and fraudulent." Roess v. St. Paul Fire & Marine Ins. Co., 383 F.Supp. 1231, 1237 (M.D. Fla. 1974).

An insurer may only rescind a policy due to a misstatement that is made in response to the insurer's specific solicitation of that information. Landmark American Insurance Company v. Moulton Properties, Inc., 2012 WL 12964325, at *5 (N.D. Fla. 2012); William Penn Life Ins. Co. of New York v. Sands, 912 F.2d 1359, 1364 (11th Cir. 1990); Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co., 674 F.Supp. 354, 357-58 (D.D.C. 1987). "This rule prevents situations that 'would give insurers the power to play 'Monday morning quarterback,' potentially voiding all policies that prove to have been bad gambles for them, by uncovering some fact—not solicited at the time of the contract's formation—that might have subsequently burgeoned into a claim upon the insurer. The Florida disclosure statute is not intended for such use; its protections are more limited." Independent Petrochemical, 674 F.Supp. at 358-59.

## IV.  PLAINTIFF CONTRACTED OUT OF *UBERRIMAE FIDEI*

Despite the clear language of the Policy including the conformity clause, Plaintiff argues that the Policy issued to Defendant does not contract out of *uberrimae fidei.*

Plaintiff asserts that the Policy can be voided for an "omission" – even if unintentional. The conformity clause precludes such an argument.

Florida law is codified at section 627.409(1)(a), Florida Statutes. Relief is available under section 627.409 if the insured conceals and omits information that is expressly requested on the application. Plaintiff does not and cannot obtain relief because it has not pleaded a claim under section 627.409.

Unlike Florida law, *uberrimae fidei* places an affirmative obligation on the insured to disclose anything "material" that may affect an underwriter. The doctrine does not apply in this case because it is in "conflict" with Florida law.

Plaintiff's argument that the Policy language "mirrors the duty of utmost good faith applicable to marine insurance policies" ignores the conformity clause and renders unavailing the decision in Northfield Insurance Co. v. Barlow, 983 F. Supp. 1376 (N.D. Fla. 1997).

Even without consideration of the conformity clause, Plaintiff's analysis must fail. To begin, under Green v. Life & Health of America, 704 So.2d 1386, 1390–91 (Fla. 1988), "parties are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." (quoting, King v. Allstate Ins. Co., 906 F.2d 1537, 1540 (11th Cir. 1990)). Green concluded that an insurance application which provided that the insured's answers in the application are "full, true and complete to the best of my knowledge and belief" created "a different 'knowledge and belief' standard." See 704 So.2d at 1391.

Geico ignores that the Policy includes the application for insurance. Gainsco v.

ECS/Choicepoint Services, Inc., 853 So.2d 491, 493 (Fla. 1st DCA 2003). The Policy must be construed as a whole. State Farm Mut. Auto. Ins. Co. v. Mashburn, 15 So.3d 701, 704 (Fla. 1st DCA 2009) ("single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders."). A reasonable construction of the entire Policy requires an intent to injure the insurer.

> The Application adopted by Geico Marine states above the signature line:
>> Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.
>>
>> While my signature verifies this information to be true, this application does not bind me to accept insurance, nor does it bind the Agent or GEICO Marine Insurance Company to accept me as an applicant for insurance. If I accept, I hereby authorize any company, credit bureau, or Department of Motor Vehicle that has knowledge of me to give such information to the Agent or GEICO Marine Insurance Company to be used for GEICO Marine Insurance Company's purposes only. Omitting, misrepresenting or stating information falsely on this application for any matter material to the risk may constitute insurance fraud, may void all coverage, and may subject the insured to criminal and civil penalties. The Insurance Company will consider claims history for purposes of (sic)

(Doc. 24-4, p. 7) (emphasis added). Coverage was issued without the Application being signed by Defendant (Corteselli Dep. 38). Plaintiff's Corporate Representative could not explain why (Corteselli Dep. 38).

This language in the application strongly suggests that the Policy will be void where the applicant has engaged in insurance fraud. Fraud requires intent. The Policy language requires an act of deception with an intent to injure. Standing alone, the word

"omitting" could suggest a lower standard to void the policy. However, a factfinder would consider the application and the Policy together as to whether the insured must intend to deceive the insurer.

When a contract of insurance is subject to multiple interpretations, the policy language should be construed liberally in favor of the insured and strictly against the insurer as author of the contract. <u>Flores v. Allstate Ins. Co.</u>, 819 So.2d 740 (Fla. 2002). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is ambiguous." <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So.2d 29, 34 (Fla. 2000).

## V. THERE WAS NO OMISSION EVEN IF INTENT IS NOT REQUIRED

Vincent Corteselli was Geico's 30(b)(6) representative. His deposition testimony shows that the Geico application is rife with ambiguity, negating any argument that an "omission" occurred. Geico's own representative did not understand his employer's marine insurance application. Geico could not explain the nature of the inquiries on the application for claims, losses or damages in the prior 3 years (Corteselli Dep. 31-32). Corteselli testified:

> **Q.  Okay, let's go to the second page. That is about claims, accidents or losses in the past three years. Are those separate inquiries? Or is that one inquiry?**
>
> A.  I would assume it is one inquiry. I don't know. I didn't design the form.
>
> **Q.  Well, what does it mean by claim? Does that refer to claims against the vessel? or claims by the vessel? What does the word claims mean there?**
>
> A.  I don't know.

> Q. **How about accidents? Does it have to be an accident involving the fault of the insured?**
>
> A. I -- I don't know.
>
> Q. **How about losses?**
>
> A. Same -- same answer.
>
> Q. **If the losses are repaired is there a loss?**
>
> A. There was a loss. It got repaired.

(Corteselli Dep. 31-32).

Geico does not ask about the intended purpose of the vessel (Corteselli Dep. 16-17). Corteselli testified:

> Q. **Does the boat have to be in perfect condition to get insured with Geico?**
>
> A. It has to be seaworthy. It has to be fit for its intended purpose. Reasonably fit.
>
> Q. **What if the boat is in need of repair and is going from one port to the other to get repairs? Can that boat be insured?**
>
> A. Is it fit for its intended purpose? If it is, it is insurable. If it isn't, it's not.
>
> Q. **Is there any question on the application that inquiries about intended purpose?**
>
> A. No, the application requires an answer about damages.
>
> Q. **Is there a question about fit for intended purpose?**
>
> A. No, there isn't.

(Corteselli Dep. 16-17).

**VI.     THERE WAS NO NAVIGATIONAL WARRANTY**

The endorsements control over the inconsistent Declaration pages and cannot support the existence of a navigational warranty.

<div style="margin-left:auto">

BERMAN LAW FIRM, P.A.

By:    *Craig L. Berman*_____
Craig L. Berman, Esquire
Fla. Bar No. 068977
Plaza Tower
111 Second Avenue N.E.
Suite 706
St. Petersburg, FL 33701
Phone: (727) 550-8989
Fax: (727) 894-6251
craig@bermanlawpa.com

**COUNSEL FOR DEFENDANT**

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served electronically with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record on this 1st day of February, 2018.

*/s/ Craig L. Berman*
Attorney